IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-03308 |
| v. | ) ) ) | Judge Zagel |
| GREEN TREE SERVICING, LLC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant, Green Tree Servicing, LLC ("Green Tree"), by its attorneys, submits this memorandum in support of its motion for partial summary judgment.

**I. <u>Introduction</u>**

After receiving their bankruptcy discharge, plaintiffs Jeffrey ("Jeff") and Katarzyna ("Katie") Modica (collectively, "Plaintiffs") elected to stay in their home.[1] They understood that if Jeff failed to make monthly payments on his mortgage, the mortgage could be foreclosed upon. Accordingly, for almost three years following the discharge, Jeff made monthly payments on his loan so Plaintiffs would not lose their home.

When Jeff stopped making payments, Green Tree (who had recently taken over servicing of the loan) attempted to contact Jeff to determine his intent with respect to the property at issue. Those calls were permitted by Section 524(j) of the Bankruptcy Code, 11 U.S.C. §524, that

---

[1] See Local Rule 56.1 Statement of Uncontested Material Facts in Support of Defendant's Motion for Partial Summary Judgment ("SOF") for a complete explication of the relevant undisputed facts.

specifically allows a secured creditor to "seek[] or obtain[] periodic payments associated with a valid security interest" when the debtor continues to reside, post-discharge, in a house in which the creditor has a security interest. Green Tree representatives actually spoke with Plaintiffs only a handful of times; Plaintiffs did not answer most of Green Tree's calls, which led to further calls. When Jeff finally returned Green Tree's calls, Green Tree tried to work with Jeff to make arrangements so Plaintiffs could stay in their home. While no such arrangements were made, Plaintiffs have brazenly continued to live at the property for the past three years without making any payment to Green Tree.

Plaintiffs have filed a two count Complaint against Green Tree based on Green Tree's phone calls to them.[2] In Count I, Plaintiffs assert that Green Tree violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") (Count I) by "placing *well over 100 phone calls* to the Modicas' cell phones using [an Automatic Telephone Dialing System ("ATDS")]." (Complaint, ¶ 44, emphasis supplied.) Green Tree is entitled to summary judgment on Katie's claim in Count I because the undisputed facts show that *no* calls were placed to Katie's cell phone using an ATDS. Likewise, only six calls were made to Jeff's cell phone using a predictive dialer. To the extent Jeff's claim in Count I is based on other calls, Green Tree is entitled to summary judgment because those calls were not made to Jeff's cell phone using an ATDS.

---

[2] Plaintiffs also filed a Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§ 105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction ("Contempt Motion"), in the case of *In Re: Jeffrey R. Modica and Katarzyna A. Modica*, Case No. 08-14633 in the Bankruptcy Court for the Northern District of Illinois. On May 15, 2014, this Court granted Green Tree's motion to withdraw the reference to the Bankruptcy Court with respect to the Contempt Motion, thereby bringing the Contempt Motion into this action. On June 18, 2014, Green Tree filed its response to the Contempt Motion. This Court has not yet ruled on the Contempt Motion.

In Count II of their Complaint, Plaintiffs allege that Green Tree violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, because its calls were purportedly "designed to coerce the Modicas into paying a debt that was not owed at the time the demands for payment were made." (Complaint, ¶ 55.)  In fact, there is no evidence that Green Tree made any misrepresentations or acted deceptively in its few actual communications with Plaintiffs, and certainly never represented that Plaintiffs owed the entirety of their discharge debt.  Rather, Green Tree's efforts to obtain periodic monthly payments while Plaintiffs continued to live in their home were not deceptive at all, but rather fully consistent with the Bankruptcy Code.  Moreover, Plaintiffs did not suffer any harm inasmuch as they did not make any payments in response to Green Tree's calls.

## II. Argument

Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986).  The movant's "burden may be satisfied by presenting specific evidence on a particular issue or by pointing out 'an absence of evidence to support the non-moving party's case.'" *Puch v. Vill. of Glenwood*, No. 05 C 1114, 2008 U.S. Dist. LEXIS 76305 at *5 (N.D. Ill. Sept. 25, 2008) (citing *Celotex*).  A mere scintilla of evidence is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).  Under this standard, Green Tree is entitled to summary judgment on all claims except for Jeff's claim in

Count I to the extent it is based on six calls that were made to his cell phone by Green Tree's predictive dialer.

A. **Green Tree Is Entitled to Summary Judgment on Katie's Claims.**

1. **Green Tree Is Entitled to Summary Judgment on Katie's Claim in Count I.**

The TCPA prohibits calls to cell phones that are made using an ATDS without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). In Count I, Katie contends that Green Tree's calls to her cell phone violated the TCPA. However, it is undisputed that all of the calls that were made to Katie's cell phone were made manually by Green Tree's calling agent, Karen Ferguson, not by an ATDS. (Local Rule 56.1 Statement of Uncontested Material Facts ("SOF"), ¶ 35.)

An ATDS is defined in the TCPA as:

> equipment which has the capacity --
>
> (A)   to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)   to dial such numbers.

47 U.S.C. §227(a)(1) (italics added). In 2008, the FCC issued a Declaratory Ruling regarding the use of ATDS technology that stated:

> The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed – *the capacity to dial numbers without human intervention….*

*See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan. 4, 2008) (emphasis supplied). Thus, courts have cited the FCC's reference to "human intervention" as a dispositive factor in determining whether

4

an ATDS was used. See, *e.q.*, *Sterk v. Path, Inc.*, No. 13 C 2330, 2014 U.S. Dist. LEXIS 73507 at *14 (N.D. Ill. May 30, 2014) (Der Yeghiayan, J.) ("The FCC emphasized that the main requirement for an ATDS is…[the ability] to 'dial numbers without human intervention.'"); *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 U.S. Dist. LEXIS 165846 at *4 (N.D. Ca. Nov. 26, 2014)(FCC's Ruling "appears to encompass any equipment that stores telephone numbers in a database and dials them without human intervention); *Jordan v. Nationstar Mortgage L.L.C.*, No. 14-cv-00787, 2014 U.S. Dist. LEXIS 148844 at *28 (N.D. Ca. Oct. 20, 2014) ("an ATDS operates without human intervention"); *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) ("the FCC clearly expressed that an ATDS is defined by 'the capacity to dial numbers without human intervention'…."). Here, it is undisputed that Green Tree's calls to Katie all required "human intervention" -- in each case, Ferguson manually initiated the call to Katie. (SOF, ¶¶ 23-35.)

Moreover, it is undisputed that the call center computers and phones used by Green Tree's callers simply do not meet the definition of an ATDS because they do not have software that would enable them to "store or produce telephone numbers to be called, using a random or sequential number generator…" 47 U.S.C. §227(a)(1). (SOF, ¶ 24.) The mere fact that Ferguson used a computer to call Katie does not mean those calls were made with an ATDS. See *Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711 at *20 (S.D. Fla. June 30, 2014), holding:

> Under the TCPA, an autodialer is "equipment which has the capacity… to store or produce telephone numbers to be called, using a random or sequential number generator, and…to dial such numbers."… As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers…. For this reason, even sophisticated computer systems are not necessarily autodialers…. …[I]f autodialers included computers, then Defendant

5

could argue for overbreadth [of the TCPA]. However, as of yet, no court, nor this one, will interpret the TCPA so broadly.

Nor does the fact that Green Tree's agents could, through their computers, theoretically sign on to Green Tree's predictive dialer ("Dialer") (SOF, ¶ 29) to participate in dialing campaigns magically convert those computers into an ATDS. *Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June 14, 2011), is directly on point. In *Dobbin*, Wells Fargo made collection calls to Dobbin's cell phone. It was undisputed that Wells Fargo used a predictive dialer called the "Conversations System" to automatically make outgoing telephone calls and that the predictive dialer had the capacity to connect available call center agents with successfully completed outbound calls. However, at the call center, the calling agent sat in a cubicle with a desk phone and a computer. The call center computers had a software program called Magellan through which the agent could log onto the universal server and be connected by the Conversations Systems to a successfully completed outbound call. However, an agent could also make outbound phone calls by manually dialing a phone number on his phone. The agent did not need to be logged into the server to make an outbound call.

The evidence showed that the calls at issue were made manually. Dobbin argued that "the TCPA prohibits even manually dialed calls to cell phones made 'using' 'equipment which has the capacity' to autodial." *Id.* at *10. Dobbin argued that the desk phones were connected to the Conversations System, and thus had the requisite capacity to autodial.

The court granted summary judgment for Wells Fargo, holding:

> Plaintiffs concede, however, that Wells Fargo's agents' desk phones can also be used independently of its predictive dialing technology – that is, while a call center agent is not logged into the universal server. And plaintiffs do not suggest that the desk phones have any capacity to autodial on their own. The Court takes as true Snyder's statements that the agents' desk phones, including those apparently used to call plaintiffs, were physically connected to Wells Fargo's

6

> automatic dialing system and that the system is used in conjunction with such phones. Snyder's affidavit, however, does not establish a genuine issue of fact regarding whether manually dialed calls made from Wells Fargo call center desk phones are made "using" equipment with the capacity to autodial within the meaning of the TCPA.
>
> To summarize, there is no evidence that the calls to plaintiffs' cell phones were autodialed. Rather, the evidence is that the calls were dialed manually. Plaintiffs concede that the desk phones can be used independently of the predictive dialing technology and thus are not necessarily connected to the Conversations System when an agent manually dials a call. Plaintiffs have offered no evidence from which a reasonable jury could find that such a connection existed when the calls at issue here were made. Given these circumstances, no jury reasonably could find based on the evidence presented to the Court that Wells Fargo employees called plaintiffs' cell phones "using" equipment which has the capacity to autodial.

*Id.* at *11-13.

The same logic applies here. While Wells Fargo's callers apparently dialed their calls by hand and Green Tree's callers can dial by hand or click on a telephone number, that is a distinction without a difference – both required human intervention to initiate the call. The fact that Green Tree's calling agents could have theoretically signed on to Green Tree's Dialer (if management had organized a Dialer campaign and directed the agents to participate in that campaign – see SOF, ¶ 33) does not mean that Ferguson called Katie's "cell phone 'using' equipment which has the capacity to autodial." *Id.*

See also, *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697-WMA, 2013 U.S. Dist. LEXIS 132574 at *11 (N.D. Ala. Sept. 17, 2013) ("The court therefore holds that, to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have *a present capacity*, at the time the calls were being made, to store or produce and call numbers from a number generator."); *Gragg v. Orange Cab Co.,* 995 F. Supp.2d 1189, 1196 (W.D. Wash. 2014) ("Defendants' system, as presently configured, does not randomly or sequentially generate

numbers… without human input. It is therefore incapable of performing as an ATDS. The mere fact that defendants' modem could, if paired with different software, develop the requisite capability is not enough under the TCPA...").

Thus, since all of the calls made to Katie's cell phone were made manually by Ferguson (and not as part of any Dialer campaign) (SOF, ¶ 35), Green Tree is entitled to summary judgment on Katie's claim in Count I as a matter of law.

### 2. Green Tree Is Entitled to Summary Judgment on Katie's Claim in Count II.

In Count II, Plaintiffs assert claims pursuant to the ICFA, alleging that Green Tree's calls were "designed to coerce the Modicas into paying a debt that was not owed at the time the demands for payment were made." (Complaint, ¶ 55.) To prove her claim under the ICFA, Katie must establish: (1) a deceptive act or practice by Green Tree; (2) Green Tree's intent that Katie rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to Katie (5) proximately caused by the deception. *Powell v. Pentagon Fed. Credit Union*, No. 10 CV 785, 2010 U.S. Dist. LEXIS 97473 at *16 (N.D. Ill. Sept. 17, 2010).

Katie's sole contacts with Green Tree were two phone calls *that she initiated* on December 20, 2011 and a conversation with a Green Tree representative at the Property in March 2012. (SOF, ¶¶ 16, 21.) Katie admits that there was no substantive conversation about the Loan during the phone calls; rather, Ferguson only explained that Green Tree was trying to get hold of Jeff. (SOF, ¶ 16.) Likewise, Katie testified that the Green Tree representative she met at the Property only said: "When Jeff gets home, have him call me – it's very important." (SOF, ¶ 21.)

There is no evidence whatsoever that Green Tree made any statements to or took any action toward Katie that was deceptive. That is hardly surprising since Katie was not a party to the Loan – why would Green Tree need to deceive her? Green Tree's contacts with Katie consisted solely of Green Tree requesting that Jeff get in touch with Green Tree. Such contacts clearly do not rise to the level of deception. Nor, of course, was Katie damaged by these few contacts – neither she nor Jeff, for that matter, made any payments on the Loan in response to Green Tree's contacts. Accordingly, Green Tree is entitled to summary judgment on Katie's claim in Count II.

**B.  Green Tree Is Entitled to Partial Summary Judgment on Jeff's Claims.**

    **1.  Green Tree is Entitled to Partial Summary Judgment on Jeff's Claim in Count I to the Extent It Is Based on Manual Calls.**

All but six of Green Tree's calls to Jeff were made by Ferguson or another calling agent manually, and not as a result of any predictive dialing.[3] (SOF, ¶ 35.) For reasons set forth above, those manually-made calls are not actionable under the TCPA and, therefore, Green Tree

---

[3]  The six calls that were made with Green Tree's Dialer were made on the following dates and times:

| DATE | TIME |
|---|---|
| 10/18/11 | 9.36.24 |
| 10/19/11 | 7.20.00 |
| 10/21/11 | 6.16.30 |
| 10/21/11 | 13.27.32 |
| 10/24/11 | 6.56.06 |
| 10/24/11 | 13.18.03 |

(SOF, ¶ 35.)

is entitled to summary judgment on Jeff's claim in Count I to the extent it is based on manually-made calls.

Moreover, even if the manual calls were found to have been made with an ATDS and thus fall under the TCPA (which they do not), Jeff gave consent to Green Tree calling him on his cell phone number, 630-625-2000 during his discussion with Ferguson on October 24, 2011. (Ex. C, Ferguson Dec., ¶ 7 and Ex. 1 thereto, entry for 10/24/11.) The TCPA does not prohibit calls to cell phones "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). In a 2008 Declaratory Ruling, the FCC clarified that creditors and debt collectors are permitted to make non-emergency calls to cell phones using an ATDS. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 564-65 (2008). The FCC concluded that credit customers give a creditor implicit prior express consent to call their cellular phone number using an ATDS if the consumer provided the telephone number to the creditor/debtor in connection with the debt at issue. *Id.* The FCC explained:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party… The Commission concludes that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*FCC Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. 6,041 (Feb. 1, 2008) (to be codified at 47 C.R.F. pt. 64); *see also,* 23 FCC Rcd. at 564-65 ("[Creditors] may use [automatic dialers] to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt…."). Thus, any call made to Jeff's cell phone after October 24, 2011 was made with Jeff's consent.

Green Tree acknowledges that six calls were made to Jeff's cell phone using a predictive dialer prior to October 24, 2011 (see footnote 3 above), and that the FCC and various courts have concluded that calls made with a predictive dialer fall with the definition of an ATDS. Accordingly, summary judgment should be entered in favor of Green Tree on Jeff's claim in Count I to the extent it is based on any calls other than those six calls.

### 2. Green Tree is Entitled to Summary Judgment on Jeff's Claim in Count II.

Jeff had only three substantive conversations with Green Tree: March 21, 2011 (where he explained to Green Tree why his payment was short and promised a payment), October 24, 2011 (where Jeff explained why he missed his October payment), and December 20, 2011 (where Jeff called to explain why he had not been making payments, confirmed his intent to keep the Property, and discussed ways Green Tree could help him get current). (SOF, ¶¶ 10, 12, and 17.)

Nothing in the evidence regarding these calls rises to the level of a deception. As discussed more fully in Green Tree's response to Plaintiffs' Sanction Motion, Green Tree had a right under the Bankruptcy Code to seek periodic payments from Plaintiffs while they continued to occupy the Property after the discharge. 11 U.S.C. § 524(j). It was hardly "deceptive" for Green Tree to seek such payments. Moreover, it is undisputed that Jeff took no action in response to Green Tree's phone calls – other than to continue to live at the Property without making payments to Green Tree. Accordingly, Green Tree is entitled to summary judgment on Jeff's claim in Count II.

### IV. Conclusion

For the reasons set forth above, the Court should enter summary judgment in favor of Green Tree as follows: (1) on Katie's claims in Counts I and II in their entirety; (2) on Jeff's

claim in Count I to the extent it is based on any calls other than the Dialer calls made to telephone number (630) 625-2000 on October 18, 19, 21 and 24, 2011; and (3) on Jeff's claim in Count II in its entirety.

Respectfully submitted,

/s/ Marshall L. Blankenship
One of the attorneys for defendant, Green Tree Servicing, Inc.

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
  MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL  60601
(312) 781-2807

## **CERTIFICATE OF SERVICE**

        The undersigned, one of the attorneys for Defendant, certifies that on January 13, 2015, he caused a copy of the foregoing Memorandum in Support of Defendant's Motion for Partial Summary Judgment to be served by U.S. Mail on:

> Mohammed Badwan, Esq.
> Matthew Hector, Esq.
> Daniel J. McGarry
> Mara A. Baltabols
> Sulaiman Law Group, Ltd.
> 900 Jorie Boulevard, Suite 150
> Oak Brook, IL  60523

                                      /s/ Marshall L. Blankenship