IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-03308 |
| v. | ) ) | Judge Zagel |
| GREEN TREE SERVICING, LLC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant, Green Tree Servicing, LLC ("Green Tree"), by its attorneys, submits this reply memorandum in support of its motion for partial summary judgment.

**I. <u>Introduction</u>**

With respect to Plaintiffs' claims under the Telephone Consumer Protection Act ("TCPA") (Count I), the material facts relating to Green Tree's calling systems and the method by which the calls at issue were made are not disputed. While Green Tree at times used a predictive dialer ("the Dialer"), the calls to Katie and all but six of the calls to Jeff were made *manually*, not using the Dialer, and thus do not fall within the TCPA's prohibition against calls made to cell phones using an "automatic telephone dialing system" ("ATDS"). Plaintiffs' only response is to argue that the calls were made with an ATDS because Green Tree's calling agent, Karen Ferguson ("Ferguson") could have logged on to Green Tree's Dialer (which is a separate calling system), even though she did not do so. This same argument was rejected by Judge Kennelly in *Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June

14, 2011), in nearly identical circumstances, and should be rejected by this Court as well. The fact that a system could be configured or steps could be taken to create a system capable of automatic dialing does not evince the present capability necessary to meet the definition of an ATDS. Accordingly, Green Tree is entitled to summary judgment on Katie's claim in Count I in its entirety and on Jeff's claim in Count I to the extent it is based on any calls other than the calls made to his cell phone on October 18, 19, 21 and 24, 2011.

With respect to Plaintiffs' claims in Count II under the Illinois Consumer Fraud Act ("ICFA"), Green Tree is entitled to summary judgment because there is no evidence that Green Tree made any misrepresentations or acted deceptively in its few actual communications with Plaintiffs, and certainly there is no evidence that Green Tree represented that Plaintiffs owed the entirety of Jeff's discharged debt (as Plaintiffs contend). Moreover, it is undisputed that Plaintiffs were not in any way deceived inasmuch as they did not make any payments in response to Green Tree's calls. Plaintiffs' only response to this argument is to claim that "Green Tree's position is nonsensical because it conditions ICFA liability not on the harmful conduct, but how the victim reacted to the same." (Pl. Mem. at 8.) But the Illinois Supreme Court has, in fact, conditioned ICFA liability on a claimant's ability to prove that he was personally deceived or misled by the defendant's actions. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002). Since Plaintiffs have not met that burden, summary judgment should be entered on Count II in favor of Green Tree.

## II. Reply Argument

### A. Green Tree Is Entitled to Summary Judgment on Katie's Claims.

#### 1. Green Tree Is Entitled to Summary Judgment on Katie's Claim in Count I.

Plaintiffs do not dispute that "[n]o calls were made by the Dialer to Katie's cell phone" and "all calls made to Katie's cell phone were thus made manually by a Green Tree representative." (Plaintiff's Response to Green Tree's Statement of Material Facts ("Pl. Fact. Resp."), ¶ 35.) Moreover, Plaintiffs admit that there were only four components to a manual call (*i.e.*, a live agent, the agent's computer, a server that stores customer information, and a phone) (Pl. Fact. Resp., ¶ 28; Pl. Mem. at 5) -- none of which required the calling agent, Ferguson, to interact with the Dialer (which was separate from Ferguson's computer and the server).

Nonetheless, Plaintiffs cite *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), for the proposition that the telephone equipment need only have the "'capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" (Pl. Mem. at 4) From this, Plaintiffs argue that Ferguson's computer had the required capacity (even though that computer itself admittedly did not have the software or hardware necessary to enable it to store or produce telephone numbers to be called using a random or sequential number generator[1]) because Ferguson could

> log into Green Tree's predictive dialing system, though its USCe interface installed on the very same computer that was used to place the calls to Katie…. Given that Green Tree's predictive dialing system can be connected to a Green

---

[1] In Paragraph 24 of its Rule 56.1 Statement, Green Tree asserted (with cited evidence) that the computers operated by its calling agents did not store customer information or have software that would enable the computer to produce telephone numbers to be called using a random or sequential number generator, and to then call those numbers. While Plaintiffs purport to dispute this assertion, none of the evidence cited by Plaintiffs actually contradicts the assertion and therefore it should be deemed admitted. See Pl. Fact Resp., ¶ 14.

3

>Tree agent's computer to achieve an auto-dialed call, it clearly has the capacity to store, produce, and dial numbers; rendering it an ATDS as defined by the TCPA.

(Pl. Mem. at 5.) That is, Plaintiffs argue that Ferguson's computer had the "capacity" to auto-dial because the calling agent theoretically could have signed on to Green Tree's Dialer from her computer.

This argument stretches the meaning of "capacity" beyond its breaking point. Again, common sense dictates that a computer does not have the required "capacity" if additional steps (such as logging onto a separate system, as in this case) must be taken to provide that computer with the required "capacity."

Indeed, since *Satterfield*, courts have distinguished between "present" and "potential" capacity – an issued that *Satterfield* did not address. *Glauser v. GroupMe, Inc.*, 2015 U.S. Dist. LEXIS 14001, at *10 (N.D. Cal. Feb. 4, 2015). As the court in *Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711 at *20 (S.D. Fla. June 30, 2014), succinctly stated:

> Under the TCPA, an autodialer is "equipment which has the capacity… to store or produce telephone numbers to be called, using a random or sequential number generator, and…to dial such numbers."… As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers…. For this reason, even sophisticated computer systems are not necessarily autodialers…. …[I]f autodialers included computers, then Defendant could argue for overbreadth [of the TCPA]. However, as of yet, no court, nor this one, will interpret the TCPA so broadly.

Thus, the dispositive question is whether Ferguson's computer and phone had the required "capacity" to auto-dial at the time she made the calls to Katie. The simple answer is "no" because Ferguson was not logged onto the Dialer and participating in a dialing campaign at the time the calls were made. That is, Ferguson's computer and phone could not (even arguably through the Dialer) store telephone numbers to be called using a random generator (*i.e.*, lacked

4

"capacity") at the time of the calls at issue because Ferguson's computer was not logged into the Dialer at that time.

In its initial memorandum, Green Tree cited *Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June 14, 2011) (Kennelly, J.), a case that is directly on point and identical to this case in all material ways. Like Ferguson's phone at issue here, the callers' phones in *Dobbin* could "be used independently of its predictive dialing technology," did not "have any capacity to autodial on their own", and were not necessarily connected to the [dialer] when an agent manually dials a call." *Id.* at *11-13.

Plaintiffs' effort to distinguish *Dobbin* misses the point. Specifically, Plaintiffs argue that "*Dobbin* is distinguishable because the defendant in *Dobbin* did *not* need to log in to the universal server, as the agent for Green Tree must, in order to place a manual call." (Pl. Mem. at 7, emphasis in original.) Of course, whether Ferguson had to connect to Green Tree's Server – which is a machine separate and apart from the Dialer – is neither here nor there. Indeed, in *Dobbin* (unlike here), the phones were "physically connected to Wells Fargo's automatic dialing system", making an even closer connection between the phone and the dialer than exists in this case, but the dispositive fact was that the caller was not logged into the dialer at the time the calls at issue were placed, meaning that the phones lacked the *present* capacity to autodial within the meaning of the TCPA. *Id.*[2]

---

[2] At pp. 5-6 of their brief, Plaintiffs attempt to distinguish the cases that Green Tree cited in support of its contention that the lack of human intervention is the *sine qua non* of an ATDS. Those cases all involved calls that were made by a predictive dialer or otherwise were automatically dialed by a machine without human intervention. *None of those cases* supports Plaintiffs' contention that a computer that could be logged into a dialer constitutes an ATDS even if it is not logged into the dialer at the time of the calls at issue.

Thus, since all of the calls made to Katie's cell phone were made manually by Ferguson (and since Ferguson was not logged into the Dialer at the times of those calls), Green Tree is entitled to summary judgment on Katie's TCPA claim in Count I in its entirety.

### 2. Green Tree Is Entitled to Summary Judgment on Katie's Claim in Count II.

In its opening memorandum, Green Tree demonstrated that it was entitled to summary judgment on Katie's ICFA claim in Count II because: (1) there was no deceptive conduct by Green Tree towards Katie; and (2) Katie was not deceived by her contacts with Green Tree because neither she nor Jeff, for that matter, made any payments on Jeff's loan in response to Green Tree's contacts.

Plaintiffs admit that Katie did not answer any of Green Tree's calls, that Ferguson spoke with Katie on only two occasions when *Katie called Green Tree*, and that Katie's two conversations with Green Tree did not include any substantive conversation about Jeff's Loan or Plaintiffs' bankruptcy. (Pl. Fact Resp., ¶¶ 16, 20.) In light of this, Katie cannot possibly meet her burden of submitting evidence that Green Tree somehow acted deceptively towards her. Nonetheless, Plaintiffs argue that Green Tree "placed over 50 calls to Katie in relation to a debt that she did not owe" and that the "only reasonable interpretation of the excessive phone calls in relation to the discharged debt was to coerce Jeff into paying a debt he no longer owed." Of course, Katie's "interpretation" of unanswered phones calls has no evidentiary weight at all, particularly when Green Tree was permitted to attempt to ascertain Jeff's intent with respect to the property and to seek monthly payments pursuant to § 524(j) of the Bankruptcy Code while Plaintiffs continued to live in the house. 11 U.S.C. § 524(j). Moreover, Katie admits that her conversations with Green Tree did not include any substantive conversation about Jeff's Loan,

6

and she has submitted no evidence that Green Tree ever demanded payment from her. (Pl. Fact Resp., ¶¶ 16, 20.) Finally, Plaintiffs cite no authority for their contention that the simple placement of calls that went unanswered can somehow rise to the level of deceptive conduct under the Act.

Of course, even if Katie could establish that Green Tree was, in fact, attempting to use deceptive methods to collect a discharged debt (which it was not), Katie still has not met her burden of introducing evidence that she was personally deceived or misled by Green Tree's actions. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002). In fact, Plaintiffs do not even argue that Katie was deceived in any way. Rather, they simply argue that it is "nonsensical" to require a plaintiff to prove that she was actually deceived by the alleged deceptive conduct. (Pl. Mem. at 8.) But it is hardly "nonsensical" to require a plaintiff to show injury in order to establish a right to recover – and the Illinois Supreme Court has made clear that a plaintiff suing under the ICFA must establish that she was actually deceived in order to make a claim under the Act. *Id.*

Thus, since there was no deceptive conduct towards Katie, let alone conduct that actually deceived Katie in any way, summary judgment should be entered in Green Tree's favor on Katie's claim in Count II.

    **B.**    **Green Tree Is Entitled to Partial Summary Judgment on Jeff's Claims.**

        **1.**    **Green Tree is Entitled to Partial Summary Judgment on Jeff's Claim in Count I to the Extent It Is Based on Manual Calls.**

Plaintiffs do not dispute that only six calls were made by the Dialer to Jeff's cell phone and that "[a]ll other calls made to Jeff's cell phone… were thus made manually by a Green Tree representative." (Pl. Fact. Resp., ¶ 35.) For the reasons set forth above, Green Tree is entitled to

summary judgment on Jeff's claim Count I to the extent it is based on calls to Jeff's cell phone that were not made by the Dialer (*i.e.*, all calls except the calls made to telephone number (630) 625-2000 on October 18, 19, 21 and 24, 2011).

Moreover, Green Tree has submitted evidence that Jeff gave consent to Green Tree calling him on his cell phone number during his discussion with Ferguson on October 24, 2011. (SOF, ¶ 13.) While Plaintiffs have purported to dispute this fact, the evidence they rely upon is Jeff's declaration (Pl. Fact Resp., ¶ 13 and Ex. C thereto, ¶11), which only states: "I have never provided my cellular phone number to Green Tree or any of its representatives and do not know how Green Tree obtained my cellular phone number." Missing, of course, is a denial by Jeff that he authorized Green Tree to call him on his cell phone on October 24, 2011 (however it was that Green Tree obtained that number), as clearly indicated in Green Tree's call records: "Connected To: 6306252000… Call Back Permission: Y, Intent to Retain Collateral: Y…" (SOF, ¶ 13 and Ex. C thereto, Ferguson Dec., ¶ 7 and Ex. 1 thereto, entry for 10/24/11.)    Thus, the record is undisputed that Jeff gave consent to Green Tree calling his cell phone on October 24, 2011, and thus any calls to his cell phone after that date are not actionable under the TCPA.

For both of these independent reasons, Green Tree is entitled to summary judgment on Jeff's claim in Count I to the extent it is based on any calls other than the calls to (630) 625-2000 on October 18, 19, 21 and 24, 2011.

### 2. Green Tree is Entitled to Summary Judgment on Jeff's Claim in Count II.

Jeff's claim in Count II pursuant to ICFA fails for the same reason as Katie's ICFS claim. It is undisputed that Jeff had only three substantive conversations with Green Tree. (SOF, ¶¶ 10, 12, and 17.) Plaintiffs cite no evidence showing that these calls rose to the level of a deception.

8

While Plaintiffs again argue that "the only reasonable interpretation" of Green Tree's calls to Jeff "was to coerce Jeff into paying a debt he no longer owed" and "had no legal obligation to pay" (Pl. Mem. at 10), Plaintiffs cite no evidence that Green Tree ever demanded payment of the entire discharged debt from Jeff.[3] Moreover, it was simply not deceptive for Green Tree to seek to ascertain Jeff's intent with respect to the Property pursuant to Section 524(j) of the Bankruptcy Code or to request monthly payments, notwithstanding the discharge, since he continued to occupy the property. 11 U.S.C. § 524(j).

Finally, it is undisputed that Jeff took no action in response to Green Tree's phone calls; rather, Plaintiffs simply continued to live at the Property without making payments to Green Tree. That is, Plaintiffs have submitted no evidence that Jeff was personally deceived by anything Green Tree said to him. Accordingly, Green Tree is entitled to summary judgment on Jeff's claim in Count II.

### III. Conclusion

For the reasons set forth above, the Court should enter summary judgment in favor of Green Tree as follows: (1) on Katie's claims in Counts I and II in their entirety; (2) on Jeff's claim in Count I to the extent it is based on any calls other than the Dialer calls made to telephone number (630) 625-2000 on October 18, 19, 21 and 24, 2011; and (3) on Jeff's claim in

---

[3] In Paragraph 12 of Pl. Fact Resp., Plaintiffs argue that "Green Tree was calling Jeff to collect payments on a discharged debt." However, the testimony that Plaintiffs cite does *not* indicate that Green Tree was calling to collect the discharged debt. Rather, that testimony indicates only that Green Tree asked for a payment. Such requests for payment were fully within Green Tree's rights under Section 524(j) of the Bankruptcy Code since Plaintiffs were continuing to live in their house, in which Green Tree had a security interest, post-discharge. *Manning v. CitiMortgage, Inc. (In re Manning)*, 505 B.R. 383 (D. N.H. Feb. 27, 2014), *Giles v. James B. Nutter & Co. (In re Giles)*, 502 B.R. 892 (N.D. Ga. Sept. 30, 2013).

Count II in its entirety.   (Thus, all that should remain of this case is Jeff's TCPA claim based on five Dialer calls.)

                                                                                      Respectfully submitted,

                                                                                      /s/ Marshall L. Blankenship
                                                                                      One of the attorneys for defendant, Green Tree Servicing, Inc.

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
  MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL  60601
(312) 781-2807

**CERTIFICATE OF SERVICE**

       The undersigned, one of the attorneys for Defendant, certifies that on March 9, 2015,, he caused a copy of the foregoing Reply Memorandum in Support of Defendant's Motion for Partial Summary Judgment to be served by ECF on:

       Mohammed Badwan, Esq.
       Matthew Hector, Esq.
       Daniel J. McGarry
       Mara A. Baltabols
       Sulaiman Law Group, Ltd.
       900 Jorie Boulevard, Suite 150
       Oak Brook, IL  60523

                                  /s/ Marshall L. Blankenship