IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-03308 |
| v. | ) ) | Judge Zagel |
| GREEN TREE SERVICING, LLC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Green Tree Servicing, LLC ("Green Tree"), by its attorneys, submits this memorandum in opposition to the motion for summary judgment filed by plaintiff, Katarzyna Modica ("Katie"), on Count I of the Complaint filed by Katie and her husband, Jeffrey Modica ("Jeff") (collectively, "Plaintiffs").

## I. Introduction

After Green Tree served its motion for partial summary judgment on Plaintiffs' claims in this lawsuit, Katie served her motion (essentially a cross-motion) for summary judgment with respect to her claim in Count I under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 ("TCPA"). That claim is based on calls made by Green Tree's calling agent, Karen Ferguson, after Jeff failed to make monthly payments on his mortgage. Ferguson's calls were made in order to determine Jeff's intent with respect to the property at issue and were permitted by Section 524(j) of the Bankruptcy Code, 11 U.S.C. §524.

The material facts relating to Green Tree's calling systems and the method by which the calls at issue were made are not disputed. By their respective motions, the parties seek a determination from this Court as to whether Ferguson's calls to Katie were made using an "Automatic Telephone Dialing System" ("ATDS") as required for liability under the TCPA. The undisputed facts show that Ferguson manually made the calls to Katie. While Green Tree at times uses a predictive dialer, the calls at issue were not made using that dialer nor was Ferguson logged onto the dialer at the time she made her calls to Ferguson. Hence, Ferguson was not using a dialing system which had the present "capacity" to store and automatically dial phone numbers and cannot be characterized as an ATDS. *E.g., Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June 14, 2011). Accordingly, Katie cannot prove an essential element of her TCPA claim. For that reason, Katie's motion for summary judgment should be denied (and Green Tree's motion for summary judgment on Katie's claims should be granted).

## II. Undisputed Facts

During the period at issue, Green Tree used two separate methods to contact customers by telephone: (1) calls made manually by calling agents at Green Tree's call centers; and (2) calls made by Green Tree's predictive dialing system ("Dialer"). (Green Tree's Local Rule 56.1(b)(3)(a) Statement of Additional Facts ("SOAF"), ¶ 1.)

### A. Manually Placed Calls

Green Tree's calling agents operated computers with a custom-built account user interface known as "UCSe." Those computers did not store customer information or have software that would enable the computer to produce telephone numbers to be called using a random or sequential number generator, and to then call those numbers. Moreover, the call

2

center computers did not have the capability to perform predictive dialing, and the call center agent had no ability to initiate predictive dialing. (SOAF, ¶ 2.)

Rather, for any given loan, the calling agent, using the UCSe interface, accessed information regarding the loan (including phone numbers when applicable) which information resided on an IBM 9117, Model MMD server ("the Server") located in St. Paul, Minnesota. If the agent determined that a call to a customer was warranted by the circumstances then existing, the agent manually placed a call to the customer by either dialing the customer's phone number on the agent's telephone, using the keypad on the agent's computer to dial the customer's number, or using the computer mouse to click on a telephone number that was displayed on the computer screen (which number was retrieved from the Server, where that information was stored). In the latter two cases, after action by the agent, the agent's computer would cause the agent's telephone to dial the customer's number and the call would proceed as if the agent had personally dialed the number on the telephone. After the call with the customer was completed and the agent moved on to another loan, all information relating to the prior loan would disappear from the agent's computer; customer information was not stored on the agent's computer. (SOAF, ¶¶ 3-5.)

In sum, the process for manual dialing required four components (*i.e.*, a live calling agent, the agent's computer, the Server, and a telephone), and the process of dialing had to be initiated by the calling agent making a decision to call the customer and then taking action to cause the number to be dialed. (SOAF, ¶ 6.)

B. **Predictive Dialer Calls**

During the relevant period, Green Tree also at times contacted customers using a predictive dialer known as the Aspect Unified IP Version 6.6 Service Pack 2 ("Dialer") to

conduct "Dialer campaigns." Green Tree's Dialer was a combination of hardware and software located in Tempe, Arizona and St. Paul, Minnesota, separate and apart from the Server and the computers located in the calling centers. The Dialer played no part in calls that were made manually by Green Tree calling agents. (SOAF, ¶¶ 7-8.)

For the Dialer to make calls, a Green Tree employee (typically management) first determined what criteria would be used to select the phone numbers that would be dialed as part of a Dialer campaign. The selected numbers were transferred in a data file from the Server to the Dialer, which then dialed those numbers. For a Green Tree agent to participate in phone calls initiated by the Dialer (*i.e.*, a Dialer campaign), it was necessary for the agent to log on to the Dialer from the agent's computer. Once the agent logged on to the Dialer, the Dialer would connect via telephone line to the agent's telephone. (SOAF, ¶¶ 9-10.)

Individual calling agents did not have the ability to set up a Dialer campaign from their computers or to otherwise initiate action by the Dialer. On occasion, a regional manager set up a Dialer campaign for calling agents in his region. If a regional manager decided that a Dialer campaign was needed, he set up the campaign by providing the account criteria for the accounts to be called. Calling agents within the region then logged onto the Dialer and the Dialer connected via phone line to the agents' phones. The Dialer then began its work and connected answered calls to available representatives. The use of the Dialer at the regional level was left to the decision of the regional managers. (SOAF, ¶ 12.)

### C. The Calls to Katie

No calls were made by the Dialer to Katie's cell phone. All calls made to Katie's cell phone were made manually by Green Tree representative, Karen Ferguson ("Ferguson"). (SOAF, ¶ 13.)

4

## III. Argument

The TCPA prohibits calls to cell phones that are made using an ATDS without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). In Count I of Plaintiffs' Complaint, Katie contends that Green Tree's calls to her cell phone violated the TCPA. However, it is undisputed that all of the calls that were made to Katie's cell phone were made manually by Green Tree's calling agent, Ferguson. Accordingly, Katie's motion for summary judgment on Count I should be denied (and Green Tree's motion for summary judgment on Katie's claims should be granted).

### A. The Calls At Issue Required Human Intervention.

An ATDS is defined in the TCPA as:

> equipment which has the capacity --
>
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

47 U.S.C. §227(a)(1) (italics added). In 2008, the FCC issued a Declaratory Ruling regarding the use of ATDS technology that stated:

> The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed – *the capacity to dial numbers without human intervention….*

*See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan. 4, 2008) (emphasis supplied). Thus, courts have cited the FCC's reference to "human intervention" as a dispositive factor in determining whether an ATDS was used. See, *e.q.*, *Sterk v. Path, Inc.*, No. 13 C 2330, 2014 U.S. Dist. LEXIS 73507 at *14 (N.D. Ill. May 30, 2014) (Der Yeghiayan, J.) ("The FCC emphasized that the main

5

requirement for an ATDS is…[the ability] to 'dial numbers without human intervention.'"); *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 U.S. Dist. LEXIS 165846 at *4 (N.D. Ca. Nov. 26, 2014)(FCC's Ruling "appears to encompass any equipment that stores telephone numbers in a database and dials them without human intervention); *Jordan v. Nationstar Mortgage L.L.C.*, No. 14-cv-00787, 2014 U.S. Dist. LEXIS 148844 at *28 (N.D. Ca. Oct. 20, 2014) ("an ATDS operates without human intervention"); *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) ("the FCC clearly expressed that an ATDS is defined by 'the capacity to dial numbers without human intervention'…."). Here, it is undisputed that Green Tree's calls to Katie all required "human intervention" – in each case, Ferguson manually initiated the call to Katie.

Moreover, it is undisputed that the call center computers and phones used by Green Tree's callers (like Ferguson here) simply do not meet the definition of an ATDS because they do not have software that would enable them to "store or produce telephone numbers to be called, using a random or sequential number generator…" 47 U.S.C. §227(a)(1). Thus, Katie has failed to offer evidence to support a necessary element of her TCPA claim (*i.e.*, use of an ATDS to call her cell phone) and her motion should therefore be denied.

  **B.**  **Ferguson's Computer Did Not Have the Present "Capacity" Required to Be Characterized as an ATDS.**

Nonetheless, Katie argues – even though the calls at issue were made not made with the Dialer, but rather were made manually – that Ferguson used an ATDS because she could have theoretically taken steps to sign on to Green Tree's Dialer (if management had organized a Dialer campaign and directed her to participate in that campaign) from her computer. In support of this argument, Katie cites *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009),

for the proposition that the telephone equipment need only have the "'capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'"[1] (Katie's Mem. at 5.) The key issue, then, is whether Ferguson's computer had the required "capacity." Common sense says it did not – as discussed above, Ferguson's computer and telephone did not have the software or hardware necessary to enable them to store or produce telephone numbers to be called using a random or sequential number generator. (SOAF, ¶ 2.)

In response to this undisputed fact, Katie argues that Ferguson's computer had the required capacity because she theoretically could have signed on to Green Tree's Dialer from her computer. This argument stretches the meaning of "capacity" beyond its breaking point. Again, common sense dictates that a computer does not have the required "capacity" if additional steps (such as logging onto a separate system, as in this case) must be taken to configure or provide that computer with the required "capacity."

Indeed, since *Satterfield*, courts have distinguished between "present" and "potential" capacity – an issued that *Satterfield* did not address. *Glauser v. GroupMe, Inc.*, 2015 U.S. Dist. LEXIS 14001, at *10 (N.D. Cal. Feb. 4, 2015). As the court in *Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711 at *20 (S.D. Fla. June 30, 2014), succinctly stated:

---

[1] In *Satterfield,* Simon & Schuster ("S&S") sent a text message to Satterfield's cell phone as part of a promotional campaign for a book it published. The district court granted summary judgment for S&S, finding that S&S had not used an ATDS because it did not "store, produce or call randomly or sequentially generated telephone numbers." 569 F.3d at 950. The Ninth Circuit reversed, finding that fact issues precluded summary judgment, holding: "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity." *Id.* at 950-51.

> Under the TCPA, an autodialer is "equipment which has the capacity… to store or produce telephone numbers to be called, using a random or sequential number generator, and…to dial such numbers."… As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers…. For this reason, even sophisticated computer systems are not necessarily autodialers…. …[I]f autodialers included computers, then Defendant could argue for overbreadth [of the TCPA]. However, as of yet, no court, nor this one, will interpret the TCPA so broadly.

Thus, the dispositive question becomes whether Ferguson's computer and phone had the required "capacity" to auto-dial at the time she made the calls to Katie. The simple answer, again, is "no" because Katie was not logged onto the Dialer and participating in a dialing campaign at the time the calls were made. That is, Ferguson's computer and phone could not (even arguably through the Dialer) store telephone numbers to be called using a random generator (*i.e.*, lacked "capacity") at the time of the calls at issue because Ferguson's computer was not logged into the Dialer at that time.

*Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June 14, 2011), is directly on point. In *Dobbin*, Wells Fargo made collection calls to Dobbin's cell phone. It was undisputed that Wells Fargo at times used a predictive dialer called the "Conversations System" to automatically make outgoing telephone calls and that the predictive dialer had the capacity to connect available call center agents with successfully completed outbound calls. However, at the call center, the calling agent sat in a cubicle with a desk phone and a computer. The call center computers had a software program called Magellan through which the agent could log onto the universal server and be connected by the Conversations Systems to a successfully completed outbound call. However, an agent could also make outbound phone calls by manually dialing a phone number on his phone. The agent did not need to be logged into the server to make an outbound call.

The evidence showed that the calls at issue were made manually. Like Katie here, Dobbin argued that "the TCPA prohibits even manually dialed calls to cell phones made 'using' 'equipment which has the capacity' to autodial." *Id.* at *10. Dobbin argued that the desk phones were connected to the Conversations System, and thus had the requisite capacity to autodial.

The court granted summary judgment for Wells Fargo, holding:

> Plaintiffs concede, however, that Wells Fargo's agents' desk phones can also be used independently of its predictive dialing technology – that is, while a call center agent is not logged into the universal server. And plaintiffs do not suggest that the desk phones have any capacity to autodial on their own. The Court takes as true Snyder's statements that the agents' desk phones, including those apparently used to call plaintiffs, were physically connected to Wells Fargo's automatic dialing system and that the system is used in conjunction with such phones. Snyder's affidavit, however, does not establish a genuine issue of fact regarding whether manually dialed calls made from Wells Fargo call center desk phones are made "using" equipment with the capacity to autodial within the meaning of the TCPA.
>
> To summarize, there is no evidence that the calls to plaintiffs' cell phones were autodialed. Rather, the evidence is that the calls were dialed manually. Plaintiffs concede that the desk phones can be used independently of the predictive dialing technology and thus are not necessarily connected to the Conversations System when an agent manually dials a call. Plaintiffs have offered no evidence from which a reasonable jury could find that such a connection existed when the calls at issue here were made. Given these circumstances, no jury reasonably could find based on the evidence presented to the Court that Wells Fargo employees called plaintiffs' cell phones "using" equipment which has the capacity to autodial.

*Id.* at *11-13.

The same rationale applies here. While Wells Fargo's callers apparently dialed their calls by hand and Green Tree's callers can dial by hand or click on a telephone number, that is a distinction without a difference – both required human intervention to initiate the call. Like the callers in *Dobbin*, there is no evidence that Ferguson was logged onto the Dialer at the time she

9

made the calls so "no jury reasonably could find" that Ferguson "called plaintiffs' cell phones 'using' equipment which has the capacity to autodial." *Id.*

See also, *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697-WMA, 2013 U.S. Dist. LEXIS 132574 at *11 (N.D. Ala. Sept. 17, 2013) ("The court therefore holds that, to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have *a present capacity*, at the time the calls were being made, to store or produce and call numbers from a number generator."); *Gragg v. Orange Cab Co.,* 995 F. Supp.2d 1189, 1196 (W.D. Wash. 2014) ("Defendants' system, as presently configured, does not randomly or sequentially generate numbers… without human input. It is therefore incapable of performing as an ATDS. The mere fact that defendants' modem could, if paired with different software, develop the requisite capability is not enough under the TCPA...").

The only other case cited by Katie, *Hernandez v. Collection Bureau of America, Ltd.*, No. 13-01626, 2014 U.S. Dist. LEXIS 140661 (C.D. Ca. Apr. 16, 2014), is inapposite. That case indisputably involved a predictive dialer with which the caller interfaced. The defendant argued that the predictive dialer was not an ATDS. The court found that it lacked jurisdiction to challenge the validity of the FCC's rule that a predictive dialer is, in fact, an ATDS. There was no discussion of the issue of "present versus potential capacity" and the facts of *Hernandez* are clearly distinguishable.

Thus, since all of the calls made to Katie's cell phone were made manually by Ferguson (and since Ferguson was not logged into the Dialer at the times of these calls), Katie's motion for summary judgment on Count I should be denied as a matter of law.

## IV. Conclusion

For the reasons set forth above, the Court should deny Katie's motion for summary judgment on Count I of Plaintiffs' Complaint and grant Green Tree's motion for summary judgment on Katie's claims.

Respectfully submitted,

/s/ Marshall L. Blankenship
One of the attorneys for defendant, Green Tree Servicing, Inc.

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
 MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue, Suite 2130
Chicago, IL 60601
(312) 781-2807

## **CERTIFICATE OF SERVICE**

       The undersigned, one of the attorneys for Defendant, certifies that on February 23, 2015, he caused a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion for Summary Judgment to be served by U.S. Mail on:

> Mohammed Badwan, Esq.
> Matthew Hector, Esq.
> Daniel J. McGarry
> Mara A. Baltabols
> Sulaiman Law Group, Ltd.
> 900 Jorie Boulevard, Suite 150
> Oak Brook, IL  60523

       /s/ Marshall L. Blankenship