IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-03308 |
| v. | ) ) | Judge Zagel |
| GREEN TREE SERVICING, LLC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**GREEN TREE SERVICING, LLC'S LOCAL
RULE 56.1(b) STATEMENT IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Green Tree Servicing, LLC, by its attorneys and pursuant to Local Rule 56.1(b), submits this response to the Local Rule 56.1 Statement of Uncontested Material Fact filed by plaintiff, Katie Modica ("Katie"), in support of her motion for summary judgment.

**Local Rule 56.1(b)(3)(B) Response to Plaintiffs' Statement of Facts**

**"The Parties"**

**Paragraph 1**

Mrs. Modica and her husband, Jeffry R. Modica ("Mr. Modica," collectively "Plaintiffs") are natural persons residing at 240 South Villa Avenue, Addison, Illinois. *Pl. Compl.* ¶4.

**Response to Paragraph 1**

Undisputed.

**Paragraph 2**

Defendant Green Tree Servicing, LLC ("Green Tree") is a limited liability company with its principal office located at 345 St. Peter Street, Suite 300, St. Paul, Minnesota. *Pl. Compl.* ¶5.

**Response to Paragraph 2**

Undisputed.

## "Jurisdiction and Venue"

**Paragraph 3**

Subject matter jurisdiction is conferred upon this Court by 47 U.S.C. § 227 and 28 U.S.C. §§ 1331, 1337, as the action arises under the laws of the United States. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. *Pl. Compl.* ¶2.

**Response to Paragraph 3**

Undisputed.

## "The Subject Debt and Subsequent Bankruptcy"

**Paragraph 4**

In May 2008, Mr. Modica obtained a loan from Countrywide Home Loans ("Countrywide") in the approximate amount of $51,000.00 ("subject debt") secured by a second mortgage on Plaintiffs' home located at 240 South Villa Avenue, Addison, Illinois. *See* attached Exhibit A, 9:17-11:3, is at [sic] true and accurate copy of the transcript of Mr. Modica's deposition.

**Response to Paragraph 4**

Undisputed.

**Paragraph 5**

Mrs. Modica was not an obligor on the subject debt. *See* attached Exhibit B, 8:21-9:5, is a true and accurate copy of the transcript of Mrs. Modica's deposition.

**Response to Paragraph 5**

Undisputed.

**Paragraph 6**

On June 6, 2008, the Plaintiffs filed a Chapter 7 bankruptcy petition in the Northern District of Illinois, case number 08-14633. *Pl. Compl.* ¶6.

**Response to Paragraph 6**

Undisputed.

**Paragraph 7**

The Plaintiffs listed Countrywide as a secured creditor in the [sic] their bankruptcy schedules. *Pl. Compl.* ¶7.

**Response to Paragraph 7**

Undisputed.

**Paragraph 8**

Mr. Modica did not reaffirm the subject debt. *See* Exhibit A, 13:11-14:9.

**Response to Paragraph 8**

Undisputed.

**Paragraph 9**

On September 9, 2008, Plaintiffs were granted a discharge of their dischargeable debts, including the subject debt. *Pl. Compl.* ¶9.

**Response to Paragraph 9**

Green Tree moves to strike this assertion because it contains an (incorrect) assertion of a legal conclusion (*i.e.*, the effect of the discharge) and is not supported by a proper citation (inasmuch as the only citation is Plaintiffs' unverified Complaint). Green Tree does not dispute that on September 9, 2008, Plaintiffs were granted a discharge in their bankruptcy proceeding and that Plaintiffs were thus personally discharged from any obligation for the subject debt. Green Tree denies that the subject debt was discharged in its entirety inasmuch as Green Tree had the right to proceed *in rem* against Jeffrey Modica and the secured property and, since Plaintiffs continued to reside at the property, the right to seek periodic payments from Jeffrey Modica associated with a valid security interest in lieu of enforcing its lien. *Johnson* v. *Home State Bank,* 501 U.S. 78, 80 (1991) (security interest and secured creditor's right to proceed against the debtor *in rem* survives discharge); 11 U.S.C. §524.

**Paragraph 10**

At some point after Plaintiffs' bankruptcy discharge, the servicing and/or ownership of the subject debt was transferred from Countrywide to Green Tree. *Pl. Compl.* ¶13.

**Response to Paragraph 10**

Undisputed.

**Paragraph 11**

Plaintiffs continued to make timely payments to Green Tree for approximately 3 years after their discharge. *See* **Exhibit A, 18:19-22.**

**Response to Paragraph 11**

Undisputed.

**Paragraph 12**

Around October 2011, Plaintiffs stopped making payments to Green Tree because of a reduction of income due to Mrs. Modica ceasing employment to stay home with their young children. *See* **Exhibit A, 18:14-20:9; Exhibit B 12:23-13:5.**

**Response to Paragraph 12**

Undisputed.

## "Informational Background"

**Paragraph 13**

Mr. Modica's cellular phone number is (630) 625-2000. *See* **Exhibit A, 30:23-31:6.**

**Response to Paragraph 13**

Undisputed.

**Paragraph 14**

Mr. Modica provided Countrywide with the following numbers in his application for the subject loan: (a) (630) 359-3507 as his "Home Phone" and (b) (630) 393-1701 as his "Business Phone." *See* **attached Exhibit C, Responses 7-8, is a true and accurate copy of Plaintiffs' Responses to Green Tree's Requests for Admissions.**

**Response to Paragraph 14**

Undisputed.

**Paragraph 15**

**Neither of the numbers listed on the application were Mr. Modica's cellular phone number.  *See* Exhibit A, 30:23-31:6; Exhibit C, Responses 7-8.**

**Response to Paragraph 15**

Undisputed.

**Paragraph 16**

**Mrs. Modica's cellular phone number is (630) 625-2342.  *See* Exhibit B, 17:5-7.**

**Response to Paragraph 16**

Undisputed.

**Paragraph 17**

**Mrs. Modica was not a signatory to the subject debt and thus her number was never provided to Countrywide during the application process for the subject loan.  *See* attached Exhibit D is a true and accurate copy of Mr. Modica's application for the subject debt.**

**Response to Paragraph 17**

Undisputed.

**Paragraph 18**

**Mrs. Modica never provided Green Tree with her cellular phone number.  *See* Exhibit B, 44:20-22.**

**Response to Paragraph 18**

Disputed.  (Declaration of Roger Sparks, ¶¶ 15-16, and Ex. 1 thereto, entry for November 12, 2011.)

**Paragraph 19**

**Green Tree obtained Mrs. Modica's cellular phone number as a result of Mrs. Modica calling Green Tree to complain about Green Tree calling her neighbors.  *See* Exhibit B, 44:20-21; also *see* attached Exhibit E, pgs. 15-16, entry dated November 12, 2011, is a true and accurate copy of Green Tree's Collection Comment List produced by Green Tree in discovery.**

**Response to Paragraph 19**

Undisputed.

## "Green Tree's Phone Systems"

**Paragraph 20**

**Green Tree employed two methods to place outgoing calls to Mr. Modica and Mrs. Modica from November 12, 2011 to April 24, 2012.  *See* attached Exhibit F, 60:16-66:4, 187:22-200:2, is a true and accurate copy of the deposition transcript of Green Tree's system manager, Roger Sparks; Exhibit E, pgs. 1-20; *see* also attached Exhibit G, Responses 1-7, a true and accurate copy of Green Tree's responses to Plaintiffs' Second Set of Interrogatories.**

**Response to Paragraph 20**

Undisputed.

**Paragraph 21**

**The first method is through a predictive dialing system.  A predictive dialing system is a combination of software and hardware which generates outbound dials in an effort to create contacts.  Predictive dialing systems are employed by the debt collection industry for efficiency purposes and are capable of placing more than 100 calls per minute.  Green**

Tree's predictive dialing system model is an Aspect Unified IP Version 6.6 Service Pack 2. *See* **Exhibit F, 22:14-27:12; 47:9-11; Exhibit G, Response 3.**

**Response to Paragraph 21**

Undisputed.

**Paragraph 22**

The second method employed by Green Tree to place calls to Plaintiffs was through a UCSE custom-built user interface software on Microsoft.NET Framework 4.0 ("UCSE"). The UCSE is a software used to access a customer's phone number and other information. This calling method requires a human to click a "dial" option ("click method") on a computer screen and is effectuated through the interplay of multiple systems. Specifically, the numbers to be called are stored on an IBM 9117, Model MMD server ("server") with an IBM System I platform and GTA and GTFC4 systems. The UCSE and server work together to enable the Green Tree agent to make a call. The number to be dialed is pulled from the server to the UCSE which then makes the call using a phone that is connected to it. *See* **Exhibit F, 61:3-66:4, 198:3-199:12; Exhibit G, Responses 2-5.**

**Response to Paragraph 22**

Undisputed.

**Paragraph 23**

The UCSE and Aspect Unified IP Version 6.6 Service Pack 2 are capable of working together to achieve a contact. Specifically, a Green tree agent can sign in to the predictive dialing system through UCSE and "exchange an account number, a phone number so that the UCSE know [sic] who it is that the dialer is trying to call. So you can have an agent sitting at a desk logged into UCSE, logged into their extension. They log into the [predictive dialing system] to take part in a predictive dialer campaign. The dialer cues off automated dials until they achieve a contact. They pass that to the available agent who is sitting at their desk logged into these applications. When it sends that audio to the agent's extension it also sends an account number via API to UCSE so it knows. UCSE pings the [server] so it can pass a screen pop" to that agent that displays the borrower's account details. *See* **Exhibit F, 63:12-66:4.**

**Response to Paragraph 23**

Green Tree moves to strike the first sentence of Paragraph 23 on the grounds that it is vague and asserts a legal conclusion. Specifically, "are capable" is tantamount to the word "capacity" used in the Telephone Consumer Protection Act, 47 U.S.C. §227(a)(1)), and has been interpreted by the courts to have different significance depending on whether the "capacity" is "present" or "potential". *E.g., Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711 at *20 (S.D. Fla. June 30, 2014). Green Tree does not dispute that the UCSE can interact with the Aspect Unified IP Version 6.6 Service Pack 2 as described in the remaining sentences contained in Paragraph 23 and in Green Tree's Local Rule 56.1(b)(3)(C) Statement below, ¶¶ 7-12.

**Paragraph 24**

**From November 12, 2011 to April 24, 2012, Green Tree placed 54 phone calls to Mrs. Modica's cellular phone using the click method.** *See* **Exhibit E, pgs. 1-16; Exhibit F, 198:3-199:12; Exhibit G, Response 3.**

**Response to Paragraph 24**

Green Tree does not dispute that it placed 54 calls to Mrs. Modica's cell phone and that those calls were made manually (*i.e.*, the number was dialed on a hard phone using the one click dial system). (Plaintiffs' Exs. E and F, 198:3-199:12.)

## Local Rule 56.1(b)(3)(C) Statement of Additional Facts that Require Denial of Plaintiff's Motion for Summary Judgment

1. During the period at issue in this case (2011-2013), Green Tree used two separate methods to contact customers by telephone: (1) calls made manually by calling agents at Green Tree's call centers; and (2) calls made by Green Tree's predictive dialing system. (Declaration of Roger Sparks, attached hereto as Exhibit A, ¶ 3.)

2. With respect to manual calls, the calling agents operated computers with a custom-built account user interface known as "UCSe." Those computers did not store customer information or have software that would enable the computer to produce telephone numbers to be called using a random or sequential numerator generator, and to then call those numbers. Moreover, the call center computers did not have the software or hardware necessary to perform predictive dialing, and the call center agent had no ability to initiate predictive dialing. (Ex. A, Sparks Dec., ¶ 4.)

3. Rather, for any given loan, the calling agent, using the UCSe interface, accessed information regarding the loan (including phone numbers when applicable) that resided on an IBM 9117, Model MMD server ("the Server") which was located in St. Paul, Minnesota. (Ex. A, Sparks Dec., ¶ 5.)

4. If the agent determined that a call to a customer was warranted by the circumstances then existing, the agent manually placed a call to the customer by either dialing the customer's phone number on the agent's telephone, using the keypad on the agent's computer to dial the customer's number, or using the computer mouse to click on a telephone number that was displayed on the computer screen (which number was retrieved from the Server,

where that information was stored). In the latter two cases, after action by the agent, the agent's computer would cause the agent's telephone to dial the customer's number and the call would proceed as if the agent had personally dialed the number on the telephone. (Ex. A, Sparks Dec., ¶ 6.)

5. After the call with the customer was completed and the agent moved on to another loan, all information relating to the prior loan would disappear from the agent's computer; customer information was not stored on the agent's computer. (Ex. A, Sparks Dec., ¶ 7.)

6. In sum, the process for manually dialing required four components (*i.e.*, a live calling agent, the agent's computer, the server, and a telephone), and the process of dialing had to be initiated by the calling agent making a decision to call the customer and then taking action to cause the number to be dialed. (Ex. A, Sparks Dec., ¶ 8.)

7. During the relevant period, Green Tree also contacted customers using a predictive dialer known as the Aspect Unified IP Version 6.6 Service Pack 2 ("Dialer") to conduct "Dialer campaigns." Green Tree's Dialer was a combination of hardware and software located in Tempe, Arizona and St. Paul, Minnesota. (Ex. A, Sparks Dec., ¶ 9.)

8. The Dialer was not used or involved in calls that were placed manually by Green Tree operatives. (Ex. A, Sparks Dec., ¶ 10.)

9. For the Dialer to make calls, a Green Tree employee (typically management) first determined what criteria would be used to select the phone numbers that would be dialed as part of a Dialer campaign. The selected numbers were transferred in a data file from the Server to the Dialer, which then dialed those numbers. (Ex. A, Sparks Dec., ¶ 11.)

10. For a Green Tree agent to participate in phone calls initiated by the Dialer (*i.e.*, a Dialer campaign), it was necessary for the agent to log on to the Dialer from the agent's computer. Once the agent logged on to the Dialer, the Dialer would connect via telephone line to the agent's telephone. (Ex. A, Sparks Dec., ¶ 12.)

11. If the Dialer detected that a live person had answered the call, the Dialer would transfer the call to an available agent (*i.e.*, an agent who had taken affirmative action to log onto the Dialer and who was not otherwise engaged in speaking with another customer), typically in Green Tree's Front End Collection Group or in another group that had logged into the Dialer. Occasionally, recorded messages were left by the Dialer instead of transfer of the call to an agent. (Ex. A, Sparks Dec., ¶ 13.)

12. Individual calling agents did not have the ability to set up a Dialer campaign from their computers or to otherwise initiate action by the Dialer. On occasion, a regional manager set up a Dialer campaign for calling agents in his region. If a regional manager decided that a Dialer campaign was needed, he set up the campaign by providing the account criteria for the accounts to be called. Calling agents within the region then logged onto the Dialer and the Dialer connected via phone line to the agents' phones. The Dialer then began its work and connected answered calls to available representatives. The use of the Dialer at the regional level was left to the decision of the regional managers. (Ex. A, Sparks Dec., ¶ 14.)

13. No calls were made by the Dialer to Katie's cell phone. All calls made to Katie's cell phone were made manually by Green Tree representative, Karen E. Ferguson. (Ex. A, Sparks Dec., ¶¶ 15-20 and Ex. 1 thereto.)

/s/ Marshall L. Blankenship
One of the attorneys for defendant, Green Tree Servicing LLC

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
  MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL  60601
(312) 781-2807

**CERTIFICATE OF SERVICE**

  The undersigned, one of the attorneys for Defendant, certifies that on February 23, 2015, he caused a copy of the foregoing Green Tree Servicing, LLC's Local Rule 56.1(b) Statement in Opposition to Plaintiff's Motion for Summary Judgment to be served by U.S. Mail on:

    Mohammed Badwan, Esq.
    Matthew Hector, Esq.
    Daniel J. McGarry
    Mara A. Baltabols
    Sulaiman Law Group, Ltd.
    900 Jorie Boulevard, Suite 150
    Oak Brook, IL  60523


           /s/ Marshall L. Blankenship