IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, <br><br>    Plaintiffs <br><br>v. <br><br>GREEN TREE SERVICING, LLC., a Delaware corporation, <br><br>    Defendant. | Case No. 14-03308 <br> Judge Zagel |

**DEFENDANT'S SURREPLY TO DEBTOR'S MOTION FOR SANCTIONS
AND DAMAGES AGAINST GREEN TREE SERVICING, LLC
PURSUANT TO 11 U.S.C. §§ 105, 524 AND FED. R. BANKR. P. 9020
FOR VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION**

Defendant, Green Tree Servicing LLC ("Green Tree"), by its attorneys, submits this surreply to the Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§ 105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction ("Motion"), filed by the plaintiff-debtors, Jeffrey R. Modica ("Jeff") and Katarzyna A. Modica a.k.a. Katie Modica ("Katie") (collectively,"Debtors"). [1]

### I. Introduction

Throughout their reply, Debtors argue that Green Tree made demands for payment of the "discharged debt" as if that was an established fact. But there is no evidence that Green Tree ever requested payment of the discharged debt in the three conversations that are at issue here, or otherwise. Rather, the evidence is undisputed that Green Tree only sought to learn Debtors' intent and to obtain the monthly payments that it was permitted to collect pursuant to §524(j) of

---

[1] Green Tree requested and was given leave to file this surreply because Debtors made arguments and cited testimony and exhibits in their reply that were not set forth in their original Motion.

the Bankruptcy Code as long as Debtors continued to occupy their house post-discharge. Contrary to Debtors' assertions, when Debtors continued to occupy the property and made monthly payments for almost *three years* after the discharge, it was wholly natural and proper for Green Tree to seek to determine Debtors' intent and to seek those monthly payments when Debtors missed a payment -- particularly absent any word from Debtors that they no longer wished to remain at the property.

Indeed, during the very few times when Green Tree actually made contact with Debtors, Debtors confirmed their intent to stay at the Property and made arrangements to make a monthly payment. Signally, the fact that in these instances Debtors only made the overdue monthly payment evidences that Green Tree was not demanding payment of the full discharged debt.

Of course, a simple statement by Debtors that they no longer wanted the property would have ended Green Tree's calls --- but Debtors apparently chose to stay at the property without making payments or revealing to Green Tree that they no longer cared if Green Tree foreclosed. In the face that silence, Green Tree was certainly permitted to make the calls at issue.

## II. Argument

### A. Green Tree Complied with §524(j).

Debtors first argue that "Green Tree's phone calls were not limited to obtaining periodic payments in lieu of pursuit of in rem relief" and thus not in compliance with §524(j). (Reply at 4, emphasis omitted.) There is no *evidence* to support this contention. Debtors cite no testimony from anyone that Green Tree sought to collect the entirety of the discharged debt. To the contrary, the evidence is undisputed that Green Tree's purpose in calling was to ascertain Debtors' intent with respect to the Property when they failed to make a timely payment *after*

*almost three years of making such payments after discharge* and when they *attempted to make their missed payments in late 2011*.

Rather, Debtors argue that "the volume and frequency of the calls" somehow evidences Green Tree's intent. But that is not the case. The number of times Green Tree's calling agent, Ferguson, called in an effort to get Debtors to speak with her only evidences that Green Tree wanted to obtain confirmation from Debtors as to their intent. It certainly does not in any way logically evidence that Green Tree wanted to collect the entirety of the discharged debt.

Debtors also argue that the fact that Green Tree "has yet to enforce its security interest and actually elected to voluntarily release its lien on the property" evidences that Green Tree's intent was something other than to seek periodic payments. (Reply at 4.) But again, that does not logically follow. The fact that Green Tree ultimately released its security interest *two years* after the calls at issue does not mean that it had decided to not pursue foreclosure at the time of the calls. (See attached Satisfaction of Mortgage dated January 28, 2014.)

Debtors rely heavily on *Otero v. Green Tree Servicing,* LLC, 498 B.R. 313 (D. N.M. Sept, 10, 2013). (Reply at 5.) However, even that case acknowledges that "[i]f Plaintiff was late, it would have been permissible for Defendant to make reasonable efforts to determine if Plaintiff had changed her mind about retaining the mobile home." *Id.* 320. Moreover, Otero was "relatively unsophisticated, with a 9th Grade education and somewhat limited literacy" and she

> testified that some of the telephone calls she received were unpleasant and forceful, and stated or implied that she was "responsible" for the payments being demanded, and was obligated to make them…. *Plaintiff testified that she asked Defendant not to call her back… several times, and Defendant ignored it.*

3

*Id.* at 315, 317 (emphasis supplied). In contrast, Jeff is a high school graduate and works as an electrician, while Katie had two years of college and worked as a medical assistant. Moreover, there is no evidence that any of Ferguson's calls "were unpleasant and forceful", or that Debtors were ever told they were obligated to do anything. Rather, there were only three substantive contacts and in each of those, Green Tree worked with Debtors to help them make a payment. The voicemails that Green Tree left were innocuous; as Jeff testified, every time Ferguson left a voicemail, she said only: "Jeff, this is Katie Ferguson from Green Tree. You need to give me call back at this number. I think she left her extension. It is very important." (Ex. A[2], Jeffrey Dep., 34:7-35:6.)

Perhaps most significantly, in *Otero*, the "[p]laintiff testified that she asked [d]efendant not to call her back… several times" whereas there is no evidence that Debtors ever told Green Tree not to call. Nor did *Otero* involve facts, like those in this case, where the debtor promised payments and partially delivered on those promises, only to miss further payments, raising obvious questions of intent with no clear answer. The facts of this case are much closer to those of *In re Manning*, 505 B.R. 3183 (D. N.H. Feb. 27, 2014), and *Giles v. James B. Nutter & Co. (In re Giles)*, 502 B.R. 892 (N.D. Ga. Sept. 30, 2013), discussed in Green Tree's initial response, and demonstrate Green Tree's compliance with § 524(j).

    **B.**    **Debtors' Deposition Testimony Does Not Show A Campaign of Harassment.**

While Debtors argue that "they never expressed any intent to stay in their home" (Reply at 6), the evidence shows the contrary in both Debtors' words and actions. First, of course, is the fact that Debtors made monthly payments for almost *three years* after their discharge, clearly

---

[2]     The exhibits referred to in this brief are attached to Green Tree's initial response to the Motion.

4

evidencing an intent to stay in their home. Then, as shown in Green Tree's call records, when Jeff's March 2011 payment was short, he confirmed to Green Tree in a phone call his intent to keep ownership of the Property, promised payment, and then made payment – both explicitly and implicitly expressing his intent to stay. (Ex. C, Ferguson Dec., ¶ 6 and Ex. 1 thereto, entry for 3/21/11.) And he did this again after he missed his October payment. (Ex. C, Ferguson Dec., ¶ 7.)

Debtors also argue that "Green Tree sent a large, intimidating man to Plaintiffs' home to induce Debtors into making a payment on the discharge debt." (Reply at 6.) But Katie's testimony refutes that argument. As Katie testified, the Green Tree representative only handed Katie a paper which had Green Tree's logo on it and said, "When Jeff gets home, have him call me – it's very important." Then the man left. Katie admits that the man did not yell or threaten her. (Ex. B, Katie Dep., 37:17-40:2, 41:6-7, 41:20-22.)

### C. Ferguson's Calls Were Proper.

Debtors devote a section of their reply to Ferguson, the Green Tree employee assigned to Debtors' account. Debtors disingenuously argue that the "servicing log demonstrates that Ferguson would place calls to Debtors a mere 5 hours after the servicing log states that Debtors stated an intent to retain the collateral; thus debunking Green Tree's 'intent' theory." (Reply at 8.) The testimony cited involved a single day and, tellingly, Debtors do cite the full extent of what transpired that day. The day in question was October 24, 2011. As reflected in Green Tree's call log, in a call at 1:23 p.m., Ferguson noted that Jeff stated that he intended to keep the collateral and that Jeff said:

> HIS WIFE SENT IN A DOUBLE PYMT [PAYMENT]. HE IS GOING TO CHECK WITH HER AND CALL ME BACK THIS AFTERNOON.

5

(Ex. C, Ferguson Dec., ¶¶ 7-8 and Ex. 1 thereto, entry for October 24, 2011 at 13.23.38.) Significantly, Jeff did *not* call Ferguson back that afternoon. (*Id.*) It is clear that when Jeff did not call Ferguson back as promised, Ferguson then called Jeff later in the afternoon to follow-up, but Jeff did not answer that call. (*Id.*, entry for October 24, 2011 at 18.53.35.) The fact that Ferguson attempted to follow-up with Jeff on a promise he made earlier in the day (but did not honor) "hardly" debunks the fact that Green Tree was seeking Debtors' intent and periodic payment.

A review of Green Tree's call log shows nothing out of order, and certainly does not evidence an intent to collect the full discharged debt.

### D. Green Tree's Procedures Were Proper.

Debtors also devote a section of their brief to arguing that Green Tree did not comply with its own manual. (Reply at 8.) Of course, whether Green Tree complied with its own manual is not probative as to whether Green Tree complied with the discharge injunction or § 524(j). Moreover, Debtors do not really explain how Green Tree failed to comply with the manual other than to conclude that Green Tree's contacts with Debtors were not "highly restricted" because Green Tree made numerous (unanswered) phone calls. But the "restrictions" referenced in the manual are chiefly limits on the contents of the call. And Ferguson complied with those limits by only attempting to ascertain Debtors' intent and attempting to follow up with them when they did not make their promised payment.

While the manual suggests that "once intent is established, no further contact should be made for thirty days, other than to follow up on a recent unfulfilled payment arrangement," an unanswered phone call is not a "contact" – it is an attempted contact. At the risk of over-

6

emphasis, there were only *three* telephone contacts with Debtors during the entire period at issue – not "26 contacts in November 2011 alone" as Debtors wrongly state.

## IV. Conclusion

Debtors have fallen shortly of establishing that Green Tree "'willfully refused to comply with a court order' or failed to be 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *In re Morris Senior Living, LLC*, 2013 U.S. Dist. LEXIS 151925 at *22-23 (N.D. Ill. Oct. 22, 2013). Accordingly, Debtors' Motion should be denied.

                                             Respectfully submitted,

                                             /s/ Marshall L. Blankenship
                                             One of the attorneys for defendant, Green Tree Servicing LLC

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
  MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL 60601
(312) 781-2807

## CERTIFICATE OF SERVICE

       The undersigned, one of the attorneys for Defendant, certifies that on March 27, 2015, he caused a copy of the foregoing Defendant's Surreply to Debtor's Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§ 105, 524 and Fed. R. Bankr. P. 9020 For violations of the Bankruptcy Discharge Injunction, to be served by CM/ECF, on:

        Mohammed Badwan, Esq.
        Matthew Hector, Esq.
        Daniel J. McGarry
        Mara A. Baltabols
        Sulaiman Law Group, Ltd.
        900 Jorie Boulevard, Suite 150
        Oak Brook, IL  60523


        /s/ Marshall L. Blankenship
        One of the attorneys for defendant, Green Tree Servicing LLC