**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a KATIE MODICA, <br><br> Plaintiffs, <br><br> v. <br><br> GREEN TREE SERVICING, LLC. <br><br> Defendant. | 1:14-cv-03308 <br><br> Honorable Judge James B. Zagel |

**PLAINTIFFS' SUR-RESPONSE IN SUPPORT OF THEIR MOTION FOR SANCTIONS AND DAMAGES AGAINST GREEN TREE SERVICING, LLC PURSUANT TO 11 U.S.C. §§105, 524 AND FED. R. BANKR. P. 9020 FOR VIOLATIONS OF THE <u>BANKRUPTCY DISCHARGE INJUNCTION</u>**

NOW COME the Plaintiffs, JEFFREY R. MODICA ("Jeff") and KATIE MODICA ("Katie") (collectively "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd., submitting their sur-response in support of their Motion for Sanctions and Damages Against Green Tree Servicing, LLC ("Green Tree") Pursuant to 11 U.S.C. §§105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction ("Debtors' Motion") as follows:

**INTRODUCTION**

Green Tree continues its cavalier defense of its contemptuous actions by doubling down on the rejected "intent theory" in its sur-reply. Characteristic of an oppressor, Green Tree refuses to take responsibility for its actions and decides to shift the blame on the oppressed by ridiculing and trivializing the Plaintiffs' grievances. Realizing that their collection efforts were not reasonable in light of the circumstances, Green Tree shifts the blame to the Plaintiffs because they did not answer the majority of its phone calls. Whether the calls were answered is irrelevant

1

to whether or not Green Tree violated the Discharge Injunction. As set forth below, Green Tree's explanation for its behavior is flawed as a matter of law and logic.

## ARGUMENT

### I. Green Tree Was Not in Compliance with §524(j)

Realizing that the Plaintiffs were able to distinguish the cases Green Tree relied upon to establish its §524(j) defense, Green Tree's sur-reply harps on the fact that the Plaintiffs remained current on the Green Tree debt for three years after they received their discharge as a justification for its contemptuous actions. It escapes logic how Plaintiffs' decision to remain current on the discharged Green Tree debt for three years is relevant to whether Green Tree violated the Discharge Injunction. Plaintiffs' decision to make voluntary payments on a discharged debt does not change the legal status of the debt from a discharged debt to a collectible debt. Reaffirming a debt is the only way a dischargeable debt can survive a bankruptcy discharge unaffected. The Plaintiffs did not reaffirm the Green Tree debt, thus prohibiting Green Tree from making attempts to collect the debt directly from the Plaintiffs.

Green Tree argues that some of the calls were made to follow up on promised payments, and thus permissible. Whether the Plaintiffs promised to make a payment is not dispositive of whether the Discharge Injunction was violated. An action taken by a creditor in the process of seeking a voluntary payment of a pre-petition debt violates bankruptcy laws if it could reasonably be expected to have a significant impact on the debtor's determination whether to repay the debt and is contrary to what a reasonable person would consider to be fair under the circumstances. *See In re Briggs*, 143 B.R. 438, 453 (Bankr.E.D.Mich.1992). Here, Green Tree placed approximately 138 phone calls to Plaintiffs in a matter of months. Placing that many calls in such a limited duration is coercive and shifts the classification of a payment from "voluntary"

to "involuntary." Plaintiffs decided not to reaffirm their loan with Green Tree because they cautiously wanted to protect themselves from liability in the event their financial circumstances after filing the bankruptcy remained dire. After struggling to make payment for 3 years and exhausting funds in his retirement account, Jeff decided that continuing to make the mortgage payments and remaining in the home was not in the best interests of his family.

Green Tree fails to explain why it did not employ less invasive methods to seek periodic payments in lieu of foreclosure. The reason for this failure is quite simple; it had no intent to foreclose on the Plaintiffs' property and the calls were designed to coerce payment on a discharged debt. Given that Green Tree never initiated a foreclosure proceeding and chose to voluntarily release its lien on Plaintiffs' home demonstrates that Green Tree had no intention of seeking *in rem* relief against Plaintiffs' property. Consequently, Green Tree does not meet the necessary elements to invoke the narrow scope of §524(j) as the payments sought were not in lieu of *in rem* relief.

## II. Green Tree Fails to Distinguish *In re Otero*

Faced with the striking similarities between the facts in this case and *In re Otero*, Green Tree desperately attempts to distinguish the facts at bar from the facts in *Otero*. Specifically, Green Tree argues that the Court in *Otero* stated "if Plaintiff was late, it would have been permissible for Defendant to make reasonable efforts to determine if Plaintiff had changed her mind about retaining the mobile home." *Def. Sur-Reply pg. 3*. Green Tree conveniently discontinues its cite prior to the next sentence in *Otero,* which states "[t]hese efforts, however, should have been *much* less intrusive and harassing than Defendant's skip tracing and telephone barrage in the fall of 2012." *Otero,* 498 B.R. 313, 320. Consequently, Green Tree's disingenuous

3

effort to distinguish *Otero* must fail as the *Otero* court found that Green Tree's conduct was unreasonable under the identical circumstances in this case.

Green Tree then attempts to distinguish *Otero* by arguing that the Plaintiffs at bar are "sophisticated" unlike the debtor in *Otero*. However, Green Tree fails to explain how the sophistication of the parties is a relevant inquiry in determining whether the Discharge Injunction has been violated. The inquiry is dependent on the *creditor's actions* and not the "sophistication" of the Plaintiffs. As a result, Green Tree's attempt to create a non-existent standard to the elements of a violation of the Discharge Injunction must fail.

Next, Green Tree attempts to distinguish *Otero* by arguing that there is no evidence that any of Ferguson's calls were "unpleasant and forceful." Green Tree is mistaken. In response to questions about the nature of the calls, Jeff testified at his deposition:

> Q: You were transferred to the manager, and tell me again specifically as best you can recall his exact words what he said you found offensive?
> A: Well, I found offensive when he was questioning where all my money was going when you haven't been paying on our loan, and what are you doing with your money?
>
> Q: Okay.
> A. Which, like I said in that point in time, I told him that's none of your business what I am going through right now. And I told him this phone conversation is over, and I hung up the phone.
>
> Q: Did you understand from the phone call that Green Tree was trying to help you to stay in your home?
> A. No. I understood it as trying to collect payment at the time because they were so adamant that I can make a payment by credit card. I can make--they wanted a payment, that was for sure.

*See* Plaintiffs' Reply, Exhibit A, 46:10-47:5.

Green Tree's argument that there is no evidence that its calls were "unpleasant or forceful" is patently false. Receiving 138 collection calls is inherently "unpleasant and forceful" by any standard. If the 138 collection calls to Plaintiffs were not "unpleasant and forceful" enough,

Green Tree's calls to Plaintiffs' neighbors and parents must tip the scales into the ballpark of "unpleasant and forceful." As such, *Otero* is directly on point.

This Court should adopt the holding in *Otero* and find that Green Tree's ferocious harassment campaign was not a reasonable effort to ascertain Plaintiffs' intent. The *Otero* court concluded that Green Tree's "intent" position loses plausibility and there are much easier, less coercive ways to determine intent and to enforce a lien right. *Otero,* 498 B.R. 313, 320. As a result, Green Tree's attempts to distinguish *Otero* miss the mark by a wide margin.

### III. Karen Ferguson's Calls Were Improper and Harassing

Green Tree argues the 138 calls made by Green Tree were not harassing. It is easy for Green Tree to argue that the calls were not harassing as it was not on the receiving end of the phone calls. In an attempt to support its position that the calls were not harassing, Green Tree argues that Jeff indicated in March 2011 his intention to stay in his home and thus any subsequent calls were made to follow up on promised payments. *Def. Sur-Rep. pgs. 4-5*. First, Plaintiffs *never* told Green Tree they wanted to stay in their home. *See* Plaintiffs' Reply, Exhibit A, 22:8-11; 23:17-22; 44:1-10; 70:8-12; 72:2-16; 82:20-23, Exhibit B, 25:23-26:4; 45:14-17. Second, assuming, *arguendo*, that Plaintiffs did tell Green Tree they wanted to stay in their home, then Green Tree's "intent" theory fails as the calls should have ceased once Plaintiffs' "intent" was established. The sheer volume and frequency of the phone calls to Plaintiffs, Plaintiffs' parents, and Plaintiffs' neighbors demonstrate that Green Tree's calls were improper, harassing, and served only one purpose; to coerce payment on a discharged debt.

**IV. Green Tree Did Not Comply with its Internal Manual**

Green Tree's sur-reply takes the position that it complied with its internal manual in relation to Plaintiffs' account. Green Tree argues that although its internal manual limits contact to once a month after intent is established, its excessive phone calls do not constitute a contact as the Plaintiffs did not answer the calls. In other words, Green Tree argues that none of the phone calls were contacts because no conversation took place. Green Tree advanced the same argument in *Otero*. However, the Court in *Otero* rejected Green Tree's argument:

> "Defendant's argument that repeated calls and voicemails are not "contacts" is unpersuasive, given the targets and tenor of the calls and messages. Further, whether or not they are "contacts" as Defendant would define that term, they are prohibited dunning calls." *Otero,* 498 B.R. 313, 321.

As in *Otero,* this Court should also find that Green Tree's self-serving definition of "contacts" to be unpersuasive.

Realizing the flaw in its position, Green Tree trivializes compliance with its own manual by stating "whether Green Tree complied with its own manual is irrelevant to the inquiry at hand" and doubles down on its "intent theory." *Def. Sur-Rep. pg. 6.* Green Tree's "intent theory" is disingenuous and inconsistent as it repeatedly states that the Plaintiffs asserted their intent to keep their home. *Def. Sur-Rep. pgs. 2, 5.* Green Tree cannot have it both ways. If Plaintiffs repeatedly stated their intent to stay in the property as Green Tree argues, the motive of the phone calls could not have been to ascertain an intent that has already been established. This inconsistency further establishes that Green Tree had only one motive in placing its calls to Plaintiffs -- to collect on a discharged debt.

**CONCLUSION**

Green Tree's attempts to justify its never-ending calls to Plaintiffs must fail as it did in *Otero*. Instead of foreclosing on its security interest, Green Tree initiated a ferocious harassment campaign designed to collect payment on a non-performing discharged debt. The undisputed facts alone establish that the only reasonable conclusion that can be drawn based on the voluminous calls to Plaintiffs and third parties is that Green Tree was attempting to coerce Plaintiffs into making payments on a discharged debt--in violation of the Discharge Injunction.

WHEREFORE, Plaintiffs, JEFFREY R. MODICA and KATIE MODICA, respectfully request that this Honorable Court grant their Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction.

Dated: April 9, 2015                                  Respectfully Submitted,

/s/ Mohammed O. Badwan
Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiffs*
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188

## **CERTIFICATE OF SERVICE**

      The undersigned, one of the attorneys for Plaintiffs, certifies that on April 9, 2015, he caused a copy of the foregoing Plaintiffs' Sur-Response in support of Debtors' Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§ 105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction, to be served by CM/ECF on all parties of record.

      /s/ Mohammed O. Badwan
      *Counsel for Plaintiffs*