UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY R. MODICA, KATARZYNA A. MODICA a.k.a. KATIE MODICA, <br><br> Plaintiffs, <br><br> v. <br><br> GREEN TREE SERVICING, LLC., a Delaware Corporation, <br><br> Defendant. | No. 14 C 3308 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jeffrey R. Modica ("Jeff") and Katarzyna A. Modica, a.k.a. Katie Modica ("Katie") (collectively, "Plaintiffs") filed this complaint against Defendant Green Tree Servicing, LLC ("Defendant") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10A ("ICFA"). Plaintiff Katie and Defendant have filed cross-motions for summary judgment. For the foregoing reasons, summary judgment is granted in favor of Defendant in part and Plaintiffs in part.

I.   FACTUAL BACKGROUND

On June 6, 2008, Plaintiffs filed a joint Chapter 7 bankruptcy and was discharged of all of their debts on September 9, 2008, including a second mortgage loan from Countrywide Home Loans ("Countrywide") in the approximate amount of $51,000 ("subject debt") on a home located at 240 South Villa Avenue ("Property"). At some point after the discharge of Plaintiffs' debts, the servicing and/or ownership of the subject debt was transferred from Countryside to Defendant. Plaintiffs never reaffirmed the subject debt and understood that the subject debt could

be foreclosed upon. Jeff made monthly payments on the subject debt for almost three years following the discharge of Plaintiffs' debts and Plaintiffs resided in the Property. Plaintiffs fell short on a March 2011 payment by $27, and on September 10, 2011, Jeff made his last payment on the subject debt. Around October 2011, after Plaintiffs stopped making payments to Defendant, Defendant started attempting to contact Jeff by telephone. Neither Jeff nor Katie had provided their cell phone numbers to Defendant nor included it on a mortgage application.

Defendant employed two methods to place outgoing calls to Plaintiffs from October 2011 to April 24, 2012: (1) Aspect Unified IP Version 6.6 Service Pack 2 ("Dialer"), a predictive dialing system which generates outbound dials at a rate of more than 100 calls per minute; and (2) a UCSe custom-built user interface software that accesses a customer's phone number that is stored on a server, rather than a computer, and requires a human to click a "dial" option ("click method"). For an agent to make a telephone call through the Dialer, an agent must be logged on to the Dialer from the agent's computer. If the Dialer detected that a live person had answered the call, the Dialer would then transfer the call to an available agent who was logged on to the Dialer. On the other hand, a live calling agent using the manual dialing method was required to initiate a call by telephone by locating the customer's phone number, which is accessed by connecting to the server, and clicking the phone number on his computer. UCSe can interact with the Aspect Unified IP Version 6.6 Service Pack 2 in such a way that an agent could sign in to the predictive dialing system through UCSe and take part in a predictive dialer campaign.

Defendant used a predictive dialing system, i.e. Dialer, to make six calls to Jeff's cell phone between October 18 and 24, 2011. On October 24, 2011, Jeff returned Defendant's call and told Defendant's representative, Karen Ferguson, that Katie had sent in a double payment and that he would check with her and call back that afternoon. Katie had not, in fact, sent in a

2

double payment and Jeff did not call Defendant back that afternoon. Ferguson attempted to contact Jeff in the days that followed, sometimes leaving messages. According to Jeff, every time Ferguson left a voicemail she said, "Jeff, this is Katie Ferguson from Green Tree. You need to give me a call back at this number. [I think she left her extension.] It is very important."

After these unsuccessful attempts to contact Jeff, Ferguson located one of Plaintiffs' neighbors, called her, and left a voicemail for her, requesting that she ask Jeff to call Green Tree. Katie then called Ferguson, on November 12, to inquire about why Green Tree had called her neighbor. As no payments were forthcoming, Ferguson continued to frequently attempt to contact Jeff and Katie. Jeff finally called Defendant in response to Ferguson's voicemails on December 20, 2011 and spoke with Defendant for fifty-four minutes. In the months that followed, Plaintiffs continued to live at the Property but made no payments to Defendant. Ferguson continued her attempts to contact Jeff, directly or through Katie or by leaving a voicemail asking him to call. Jeff did not return any of these voicemails. Katie alleges that in early March 2012, Defendant sent a representative to the Property to determine whether the Property was still occupied and what Jeff intended to do. Katie answered the door and Defendant's representative handed Katie a paper which had Defendant's logo on it. The representative said "When Jeff gets home, have him call me—it's very important." Jeff was not home.

Between November 12, 2011 and April 24, 2012, Defendant placed a total of fifty-four phone calls to just Katie's cell phone and numerous additional calls to Jeff's cell phone through a manual "click" method. Plaintiffs claim that Defendant placed over one hundred and thirty phone calls to Plaintiffs' cellular phones between October 18, 2011 and April 23, 2012. Defendant sent

a correspondence to Plaintiffs advising them that Defendant is releasing the lien on the Property in November 2013, after this lawsuit was filed.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

**III.    DISCUSSION**

   A.    Count I: TCPA

   1. Capacity

The TCPA makes it unlawful for a person to call the cellular telephone number of any person using an automatic telephone dialing system ("ATDS") without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Under the TCPA, an ATDS is any "equipment which has the capacity to (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. § 227(a)(1). In identifying whether equipment qualifies as an ATDS, courts have assessed whether equipment has the *capacity* to store and auto-dial telephone numbers, rather than whether the system actually stores, produces, or calls randomly or sequentially generated telephone numbers. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir.2009) (emphasis added). To that end, the Federal Communications Commission ("FCC") recognized the capacity to dial numbers without human intervention as an essential requirement for an ATDS. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan. 4, 2008); *Sterk v. Path, Inc.*, 2014 WL 24434785 (N.D. Ill. May 30, 2014).

Plaintiffs argue that Defendant placed "over 100 phone calls to the Modicas' cell phones" using equipment that qualified as an ATDS under the TCPA. It is undisputed that Defendant placed fifty-four phone calls to Katie's cell phone, as well as numerous additional calls to Jeff, using the "click" method. It is also undisputed that Defendant's predictive dialing system, i.e. Dialer, is an ATDS. The main issue here is whether the equipment used to make calls to Plaintiffs through the "click" method, which was connected to a server but not directly logged into the

5

Dialer, also had the present capacity to produce, store, and automatically dial phone numbers such that it qualified as an ATDS under the TCPA.

Defendant relies on *Dobbin v. Wells Fargo Auto. Fin., Inc.* as central to its proposition that a manually made call does not have the "capacity" to be made from an auto-dialer just because the agent could theoretically sign on to an ATDS. 2011 WL 2446566 (N.D. Ill June 14, 2011). As in the present case, the defendant in *Dobbin* had two distinct methods for making calls. First, the defendant could use a predictive dialing system called a Conversations System. The universal server—one component of the Conversation System—stored or produced phone numbers to be dialed. The server then passed the numbers to the digital communications processor, which dialed them. An available agent, sitting at a cubicle with a desk phone and a computer, who was logged into the universal server and connected to the Conversations Systems, could successfully complete the outbound calls using a desk phone. Alternatively, the defendant could make calls manually, wholly independent of the Conversation System, by dialing a phone number into a keypad of the desk phone and would not need to be logged into a universal server or even use a computer. There, the court granted summary judgment in favor of the defendant after determining that the calls were made manually, that the desk phones could be used independently of the ATDS, and that the plaintiffs had not presented any evidence that a connection to the Conversations System existed when the calls were made.

As in *Dobbin*, Defendant had two methods for making calls. Defendant could make calls using either an ATDS "Dialer" or by the "click" method, which operated through the UCSe custom-built user interface software. Agents, such as Ferguson, were required to be connected to the server to access customer information. Upon accessing this information, an agent would then initiate a telephone call by clicking on a customer's phone number, which would then be displayed on her computer. Because Defendant did not "store or produce telephone numbers to be called" on call center computers and phones, agents were not able to access customer information on their

computers without logging into the server. Agents could, however, initiate calls without being logged into the Dialer.

When Ferguson initiated calls to Plaintiffs using the "click" method, she was connected to the server but was not logged in to the Dialer. Plaintiffs do not dispute that neither the server nor the UCSe software were connected to the Dialer. Nonetheless, Plaintiffs argue that even though Ferguson was not logged into the Dialer when she placed calls to Plaintiffs, she had the *capacity* to log into the Dialer from her computer. Consequently, Plaintiffs argue, Ferguson had the *capacity* to auto-dial customer's numbers such that she was using an ATDS. However, as in *Dobbin*, Ferguson would not have had the capacity to make auto-dialed calls unless at least one additional step was taken: Ferguson would have to log into the Dialer. It is true that the additional step of logging into the Dialer is minimal—even smaller than in *Dobbin*. Nonetheless, Ferguson did not take that step and the equipment Ferguson used to call Plaintiffs was not capable of dialing numbers without human intervention. Plaintiff has not presented any evidence to establish a material question of fact that there was a connection to the Dialer or that the equipment Ferguson used had the present capacity of an ATDS. Summary judgment is granted in favor of Defendant as to Count I with respect to calls made to Katie and Jeff through the "click" method.

2. Consent

Even if Defendant had used an ATDS, Defendant would only have acted in violation of the TCPA if it had called Plaintiffs' cell phones without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). In the debt collection context, the FCC has stated that "express consent" is given if a consumer gives a creditor a cell phone number "during the transaction that resulted in the debt owed." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013), *reconsideration denied*, No. 12 C 4415, 2013 WL 3872171 (N.D. Ill. July 29, 2013). Plaintiff Jeff did not provide his cell phone number in his mortgage application. Katie was not a

signatory to the Green Tree debt and did not consent to be called on her cell phone. Rather, Defendant obtained her number when she made an inbound call to complain about Defendant calling her neighbors regarding the subject debt. *Levy v. Receivables Performance Management, LLC.*, 972 F.Supp.2d 409, 422-23 (E.D.N.Y. 2013) (holding that consent is not provided for TCPA purposes if the phone number is obtained by virtue of being captured by a Caller ID when the caller makes an inbound call).

The FCC requires that express consent under the TCPA is "clearly and unmistakenably stated." *Satterfield*, 569 F.3d at 955(citing Black's Law Dictionary 323 (8th ed.2004)); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 1 (2008). There is no evidence to support that either Katie or Jeff gave clear, express consent to being contacted at their cell phones by Defendant using an ATDS. In any case, as I have found that calls made by Defendant using the "click" method did not have the capacity of an ATDS, I limit my discussion to the six calls Defendant concedes that it made to Plaintiff Jeff Modica's cell phone using an ATDS on October 18, 19, 21, and 24, 2011. Defendant argues that Jeff consented to being called at his cell phone number during his discussion with Defendant on October 24, 2011. Even *assuming arguendo* that Plaintiff Jeff provided consent on October 24, 2011, it is undisputed that these six calls were made by Defendant using an ATDS prior to any consent being given by Jeff. To that end, summary judgment is granted in favor of Jeff's Count I claim with respect to these calls.

    B.    Count II: ICFA

The ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Batson v. Live Nation Entm't, Inc.,* 746 F.3d 827, 830 (7th Cir.

2014) (citing *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 416–17, 266 Ill. Dec. 879, 775 N.E.2d 951, 960 (2002)). To prove an ICFA claim, Plaintiffs must establish (1) a deceptive act or practice by Green Tree; (2) Green Tree's intent that Plaintiffs rely on the deception or unfair practice; and (3) the occurrence of the deception or unfair practice occurred in the course of conduct involving trade or commerce. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012). In addition, Plaintiffs must demonstrate that Green Tree's conduct is the proximate cause of the injury. *Id.* "A practice is deemed 'unfair' for ICFA purposes based upon factors such as (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; or (3) whether it causes substantial injury to consumers." *Aker v. Bureaus Investment Group Portfolio No. 15 LLC*, 2014 WL 4815366 at *6 (N.D. Ill. 2014) (citing *Robinson*, 201 Ill.2d at 417-18).

Plaintiffs allege that Defendant engaged in a deceptive or unfair practice when it placed fifty four calls to Katie's phone and called the Modicas' neighbors with the intention of "coerc[ing] the Modicas into paying a debt that was not owed at the time the demands for payment were made." Defendants argue that it was allowed to make these calls to obtain periodic monthly payments while Plaintiffs continued to live in their home, and it never represented that Plaintiffs owed the entirety of their discharged debt. Moreover, Plaintiffs did not suffer any harm, Defendant argues, because they did not make any payments in response to Green Tree's calls.

When Plaintiffs stopped making monthly payments to Defendant on the Property around October 2011, Defendants started contacting Jeff and, then, Katie by telephone. While Defendants spoke with Katie twice and Jeff thrice on the phone in approximately six months, it persistently attempted to reach the Modicas by telephone—frequently multiple times a day and over one hundred times over the same time period. Defendant also went one step further when,

9

within the first thirty days it had started calling the Modicas regarding the late monthly payments, Defendant called the Modicas' neighbor to request that they ask Plaintiffs to call Green Tree. Regardless of whether Defendant's practice of making numerous, persistent calls in its effort to collect outstanding payments was unfair under ICFA, Plaintiffs have, nonetheless, failed to establish any evidence of actual injury. Defendant's motion for summary judgment on Count II is granted in its entirety.

## IV. CONCLUSION

For the foregoing reasons, summary judgment is granted as to Count I in favor of Defendant with respect to calls made to Katie and Jeff through the "click" method and in favor of Plaintiffs with respect to the six calls that Defendant made to Jeff's cell phone on an ATDS without his consent. Summary judgment is granted in favor of Defendant as to Count II.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 29, 2015